Judge McMahon

12 CV 6509

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MON CHONG LOONG TRADING CORP.; FOODMART INTERNATIONAL II CORP., LUCKY STAR-DEER PARK, LLC; R&R DYNASTY CORP.; WOOGLE REALTY CORP.; BUFFET CORONA CORP.; FARMER'S BEST MARKET CORP.; HONG KONG SUPERMARKET OF ELMHURST, INC.; and HONG KONG SUPERMARKET OF PENNSYLVANIA, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> TRAVELERS EXCESS AND SURPLUS LINES COMPANY, and DOES 1-10, <br><br> Defendants. | Case No.: <br><br><br> **COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF** <br><br><br> **DEMAND FOR JURY TRIAL** |



RECEIVED
AUG 24 2012
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs Mon Chong Loong Trading Corp., FoodMart International II Corp., Lucky Star-Deer Park, LLC, R&R Dynasty Corp., Woogle Realty Corp., Buffet Corona Corp., Farmer's Best Market Corp., Hong Kong Supermarket of Elmhurst, Inc., and Hong Kong Supermarket of Pennsylvania, Inc. (collectively, "Plaintiffs"), through their attorneys Manatt, Phelps & Phillips, LLP, hereby submit their Complaint against Defendant Travelers Excess and Surplus Lines Company ("Defendant" or "Travelers"), and allege as follows:

### NATURE OF THIS ACTION AND RELIEF SOUGHT

1. This complaint by Plaintiffs is to collect bargained-for coverage under their primary, "all risks" property insurance policy. The primary purpose for the policy was to provide protection for Plaintiffs in the event that they suffered property damage, losses, and expenses, including business income and extra expense losses, to their insured

premises. The coverage afforded by this policy was understood and intended, among other benefits, to protect Plaintiffs in the event they suffered property damage, losses, and expenses. Indeed, Plaintiffs purchased this insurance so that they could avoid financial pressure on their businesses in connection with property damage, losses and expenses at the locations insured by the policy.

2.  The eventualities that the policy was sold to cover occurred: (a) on August 28, 2011, several of Plaintiffs' insured properties in New York were damaged due to Hurricane Irene, causing Plaintiffs to incur property damage, losses and expenses, which include business income and extra expense losses; (b) on September 4 and 25, 2011, an insured property in Philadelphia, Pennsylvania was damaged when a thief climbed onto the roof of the property and stripped the copper from the HVAC and refrigeration condensers, breaking the refrigerator and freezer systems, resulting in damage to the insured property, product damage, and loss of business income and extra expense; and (b) on January 19, and February 9. 2012, the Pennsylvania property experienced additional damage caused by power outages, which shut the refrigeration and freezer systems down, resulting in damage to the insured property, significant product damage, and loss of business income and extra expense.

3.  Because these losses, damages and expenses are precisely the type of losses covered by the policy, Plaintiffs timely notified Travelers of these losses and requested coverage under the policy. However, instead of honoring its duties, on August 10, 2012, Travelers wrongfully denied coverage to Plaintiffs for the entirety of these losses. Thus, Travelers has sought to deprive Plaintiffs of the financial security and protection that was the primary reason and purpose for the purchase of the policy.

4.  Travelers' denial of coverage and refusal to pay for these losses at the New York and Pennsylvania locations constitutes a breach of the insurance policy. Plaintiffs seek compensatory damages resulting from Travelers' breach. Travelers' denial also is contrary to the duty of good faith and fair dealing that it owes to Plaintiffs,

2

and constitutes bad faith. Plaintiffs seek consequential damages, attorneys' fees and costs, plus interest, resulting from Travelers' bad faith.

## THE PARTIES

5. Mon Chong Loong Trading Corp. ("MCL") is incorporated under the laws of New York, with its principal place of business in New York. MCL is one of the largest privately owned Asian food importers and distributors in the United States, which includes the operation of warehouse and distribution facilities in several states, including New York and Pennsylvania.

6. FoodMart International II Corp. ("FoodMart") is incorporated under the laws of New York, with its principal place of business in New York. FoodMart operates a supermarket located at 175 Route 59, Spring Valley, NY, which is a insured location under the Policy as it is one of the premises listed on the Statement of Values on file with Travelers. On July 5, 2012, FoodMart filed for Chapter 11 bankruptcy protection.

7. Lucky Star-Deer Park, LLC ("Lucky Star") is a limited liability company organized under the laws of New York, with its principal place of business in New York. Lucky Star is the owner of premises located at 377 Carll's Path, Deer Park, NY, which is an insured location under the Policy as it is one of the premises listed on the Statement of Values on file with Travelers.

8. R&R Dynasty Corp. ("R&R") is incorporated under the laws of New York, with its principal place of business in New York. R&R is the owner of premises located at 42-46 Main Street, Hempstead, NY, which is an insured location under the Policy as it is one of the premises listed on the Statement of Values on file with Travelers.

9. Woogle Realty Corp. ("Woogle") is incorporated under the laws of New York, with its principal place of business in New York. Woogle is the owner of premises located at 306 Fulton Street, Hempstead, NY, which is an insured location under the

Policy as it is one of the premises listed on the Statement of Values on file with Travelers.

10. Buffet Corona Corp. ("Buffet") is incorporated under the laws of New York, with its principal place of business in New York. Buffet is the tenant in a portion of the premises owned by R&R in Hempstead, NY.

11. Farmer's Best Market Corp. ("Farmer's") is incorporated under the laws of New York, with its principal place of business in New York. Farmer's is the tenant in a portion of the premises owned by R&R in Hempstead, NY.

12. Hong Kong Supermarket of Elmhurst, Inc. ("Hong Kong-Elmhurst") is incorporated under the laws of New York, with its principal place of business in New York. Hong Kong-Elmhurst owns and operates a supermarket at 82-02 45th Avenue, Elmhurst, NY, which is an insured location under the Policy as it is one of the premises listed on the Statement of Values on file with Travelers.

13. Hong Kong Supermarket of Pennsylvania Inc. ("Hong Kong-PA") is incorporated under the laws of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania. Hong Kong-PA owns and operates a supermarket at 501 Adams Avenue, Rising Sun Plaza, Philadelphia, Pennsylvania, which is an insured location under the Policy as it is one of the premises listed on the Statement of Values on file with Travelers.

14. Plaintiffs are informed and believe, and on that basis allege, that Travelers is a Connecticut corporation, with its principal place of business at One Tower Square, Hartford, Connecticut 06183.

15. Plaintiffs are ignorant of the true names and capacities, whether individual, associate, partnership, corporate, or otherwise, of the defendants fictitiously designated herein as Does 1 through 10, and therefore sue those defendants by these fictitious names. Plaintiffs will seek leave of Court to amend this complaint when the true names and capacities of these fictitiously designated defendants have been

ascertained. Plaintiffs are informed and believe, and on that basis allege, that Does 1 through 10, in some way unknown to Plaintiffs, have underwritten or provided insurance coverage to them, or are otherwise responsible for losses alleged herein, and that Does 1 through 10 are authorized to, and do, transact insurance business in the State of New York.

## JURISDICTION AND VENUE

16. This Court has personal and original jurisdiction pursuant to 28 U.S.C. §1332, as there is complete diversity between Plaintiffs and Travelers and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17. Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district and a substantial part of the property that is the subject of this action is located in this district.

18. Venue is also appropriate in this district pursuant to 28 U.S.C. §1391(a)(3) in that Travelers is subject to the personal jurisdiction of this Court as of the date of the filing of this complaint.

## THE INSURANCE POLICY

19. In exchange for Plaintiffs' payment of substantial premiums, Travelers issued to Plaintiffs a primary, "all risk" property insurance policy number KTQ-CMB-1A11560-7-11, with a policy period from May 11, 2011, to May 11, 2012 (the "Policy"). A true and correct copy of at least the relevant portions of the Policy is attached hereto as Exhibit A and incorporated herein by reference.

20. Plaintiffs all are "Named Insureds" or Insureds under the Policy and are listed as such on the Statement of Values on file with Travelers for the Policy.

21. The Policy provides up to $70,000,000 in coverage for liability for loss or damage arising out of one occurrence. *See* Ex. A, Supplemental Coverage Declarations, § A.

22. Under the Policy, Travelers agreed to insure risks of direct physical loss to Covered Property at the premises described in the Statement of Values on file with Travelers, caused by or resulting from a Covered Cause of Loss. Covered Cause of Loss is defined in the Policy to mean "risks of direct physical loss" unless the loss is excluded or subject to limitations. *Id.*, Property Coverage Form, § A.

23. The Policy provides coverage for, among other things, (a) direct physical loss to property, including business personal property; (b) debris removal; (c) claim data expenses incurred by the insured in preparing claim data for Travelers; (d) business income loss, which includes extended business income loss and claim data expenses; (e) extra expense, which includes claim data expenses; (f) flood loss; (g) boiler and machinery loss for numerous types of equipment, which includes extended coverage for water damage, consequential damage, and utility services loss; and (h) utility services, for loss or damage to Plaintiffs' properties caused by the interruption, failure or fluctuation of service to the covered properties, and also includes loss of business income and extra expense incurred.

24. Plaintiffs have complied with all terms and conditions precedent, to the extent not waived or otherwise excused, including payment of all premiums and providing timely notice of the losses, damages and expenses. Plaintiffs are entitled to the full benefits and protections provided by the Policy. Plaintiffs reasonably expected the Policy to protect them in connection with these losses and reasonably relied upon the Policy for such protection. Indeed, the very purpose of Plaintiffs' purchase of the Policy was to provide protection in the event of property and equipment losses, business income losses, extra expense losses, and other losses, damages and expenses.

25. Any and all alleged conditions precedent to Plaintiffs' claims under the Policy with respect to the losses, damages and expenses have either been satisfied, waived, excluded or do not need to be performed because Travelers would not be prejudiced by such non-performance.

## FACTUAL BACKGROUND

### The New York Premises

26. On August 28, 2011, Hurricane Irene caused substantial damage to Covered Property at the following premises, all of which are described in the Statement of Values on file with Travelers for the Policy, which are owned and/or leased by Plaintiffs (collectively referred to herein as the "New York Premises"):

| Named Insured | Property |
| --- | --- |
| Lucky-Star-Deer Park, LLC | 377 Carll's Path, Deer Park, NY |
| Hong Kong Supermarket of Elmhurst, Inc. | 82-02 45th Avenue, Elmhurst, NY |
| R&R Dynasty Corp. | 42-46 Main Street, Hempstead, NY |
| Woogle Realty Corp. | 306 Fulton Street, Hempstead, NY |
| Buffet Corona Corp. | 42 Main Street, Hempstead, NY |
| Farmers Best Market Corp. | 42 Main Street, Hempstead, NY |
| FoodMart International II Corp. | 175 Route 59, Spring Valley, NY |

27. Hurricane Irene is a Covered Cause of Loss as defined in the Policy, and caused damage at the New York Premises to property and business personal property, and inventory. It also required debris removal at the New York Premises, and resulted in significant business income loss, extra expense loss, boiler and machinery loss, and claim data expenses, all of which are covered under the Policy, and for which Plaintiffs are seeking indemnity from Travelers.

### The Pennsylvania Premises

28. On September 4 and 25, 2011, Plaintiffs suffered property damage to insured property located at 501 Adams Avenue, Rising Sun Plaza, Philadelphia, Pennsylvania, which is described in the Statement of Values on file with Travelers for the Policy (the "Pennsylvania Premises"), when a thief, on each occasion, climbed onto the roof and stripped off the copper from the HVAC and refrigeration condensers. This

resulted in not only property damage, but loss of business income, and extra expense, among other losses, damages and expenses.

29. Later, on January 19, 2012, and February 9, 2012, Plaintiffs suffered additional property damage at the Pennsylvania Premises resulting from two separate power outages. According to PECO, the utility company for that area, the first power outage was caused by an underground cable failure. The second power outage occurred when a squirrel shorted the lightning arrestors on a 13,200 volt service and caused a power outage to the entire mall. In connection with the February 9, 2012, outage, PECO reported that "Customer's equipment may have also been damaged." These power outages resulted in damage to the refrigeration and freezer systems, and, thus, resulted in inventory losses, losses to business income and extra expense.

30. The damage caused by the thefts and two power outages to the Pennsylvania Premises was caused by or resulted from a Covered Cause of Loss, and included damage to property, equipment and inventory. The damage constitutes property damage, business income loss, extra expense loss, boiler and machinery loss, and claim date expenses, among other losses, all of which are covered under the Policy, and for which Plaintiffs are seeking indemnity from Travelers.

## TRAVELERS' BREACHES IN HANDLING THE CLAIMS

### The New York Premises Claims

31. Plaintiffs timely tendered the New York Premises claims to Travelers seeking coverage for damage to the property, equipment, inventory, debris removal, and loss of business income, the extra expense, and other losses, damages and expenses caused by Hurricane Irene.

32. In connection with Travelers' purported investigation, in a letter dated September 19, 2011, Travelers initially acknowledged that "it was determined the following buildings [the New York Premises] (as listed in the most recent Statement of Values on file) have sustained interior water damage." However, Travelers attempted to

improperly conclude that much of the damage to the New York Premises was not caused by Hurricane Irene.

33. In an October 18, 2011, letter, Travelers advised that it had completed its investigation into the cause of the damage to the New York Premises. It advised that "based on the facts and evidence presented to us; we have completed our coverage analysis and have determined that coverage is afforded" for at least a portion of the losses being sought at the New York Premises. Indeed, Travelers acknowledged "wind damage" to the buildings at the Elmhurst, Deer Park and Spring Valley locations, "interior water damage" to the building and personal property at the Elmhurst location, and "losses to inventory, equipment and business income in relation of failure of power" to the Spring Valley location.

34. In a January 18, 2012, letter, Travelers demanded that Plaintiffs provide a sworn statement in proof of loss for the Elmhurst, Deer Park and Spring Valley locations. Travelers also demanded that Plaintiffs provide it with over 30 categories of documents to be submitted with the proof of loss, and demanded that all of these materials be submitted within 60 days.

35. Plaintiffs timely submitted to Travelers voluminous and detailed documentation and financial information supporting their claims of physical loss and damage, and business income and extra expense losses and expenses, and repeatedly pressed Travelers for an adjustment of their loss and payment of all claims. Plaintiffs also regularly communicated (through written communications, meetings and telephone calls) with Travelers and its representatives concerning their losses, damages, and expenses.

36. Plaintiffs also timely submitted to Travelers satisfactory proofs of loss, when demanded by Travelers, that summarized their claims, which included detailed back up information and documentation supporting their claims.

37. Plaintiffs further submitted to examinations under oath, as requested by Travelers. Travelers examined Lewis Wu on June 5 and June 29, 2012, and Jeffrey Wu on June 29, 2012.

38. To date, Plaintiffs have submitted to Travelers claims for physical loss or damage to the New York Premises, as well as for business income losses and expenses, and extra expenses, caused by or directly resulting from Hurricane Irene in excess of $9,000,000.

### The Pennsylvania Premises Claims

39. Plaintiffs similarly timely tendered the Pennsylvania Premises claims to Travelers seeking coverage for damage to the property, equipment, inventory, business income, extra expense, and other losses, damages and expenses caused by (a) the two copper thief incidents; and (b) the two power outages.

40. Plaintiffs submitted to Travelers documentation and financial information supporting the claims of physical loss and damage, and business income and extra expense losses in connection with the Pennsylvania Premises claims. Plaintiffs have communicated (through written communications, meetings and telephone calls) with Travelers and its representatives concerning the losses, damages, and expenses.

41. Travelers has not required Plaintiffs to submit a proof of loss with respect to the losses, damages and expenses suffered due to the two copper theft incidents at the Pennsylvania Premises.

42. Plaintiffs timely submitted to Travelers satisfactory proofs of loss for the losses, damages and expenses resulting from the two power outages at the Pennsylvania Premises. However, in letters dated May 8, 2012, Travelers returned the Proof of Loss statements, claiming – without any factual basis or support – that it disagreed with the amounts claimed. Travelers later advised Plaintiffs that it had retained an accounting firm to assist in the measure of the losses, and requested some additional information.

43. To date, Plaintiffs have submitted to Travelers claims for physical loss or damage to the Pennsylvania Premises, as well as for business income losses and expenses, and extra expenses, caused by or directly resulting from the power outages in excess of $1,500,000.

### Travelers' Wrongful Denial of the Claims

44. Despite the full cooperation by Plaintiffs in connection with these covered claims, Travelers engaged in a wrongful series of acts aimed at depriving Plaintiffs of the benefits and financial protections afforded by its Policy. Instead of honoring its duties, Travelers undertook a campaign to escape liability and relieve itself from the obligations the Policy imposes on it to Plaintiffs.

45. On August 10, 2012, after stringing Plaintiffs along by advising that Travelers was purportedly investigating the New York Premises claims, and addressing the amounts owed for the Pennsylvania Premises claims, Travelers denied coverage for the damages for the New York and Pennsylvania Premises in their entirety claiming that Plaintiffs had caused the Policy to become void through purported concealment, misrepresentation or fraud by Plaintiffs in connection with their submission of claims for loss and/or damage to the properties. Indeed, Travelers, in an effort to avoid its obligations under the Policy, egregiously and wrongfully claimed that Plaintiffs had intentionally concealed or misrepresented material facts to Travelers in connection with the submission of these claims. A copy of Travelers' August 10. 2012 denial letter is attached to this complaint as <u>Exhibit B</u> and incorporated herein by reference.

46. Travelers' attempt to void the Policy with respect to coverage for the losses, damages and expenses at the New York and Pennsylvania Premises is without factual support or reasonable justification, and is in breach of Travelers' obligations under the Policy.

## FIRST CAUSE OF ACTION

### (Breach of Contract, including Breach of the Covenant of Good Faith and Fair Dealing, Against Travelers)

47. Plaintiffs reallege and incorporate by reference herein each allegation contained in paragraphs 1 through 46 above.

48. Travelers owed, and continues to owe, Plaintiffs a duty to reimburse them for the losses, damages and expenses Plaintiffs have incurred in connection with the New York Premises and Pennsylvania Premises claims. Travelers' commitment to pay for these losses, damages and expenses incurred by Plaintiffs was a significant right afforded to them under the Policy. This is a commitment that Travelers wrongfully breached when it failed to expeditiously adjust and pay the claims, and wrongfully denied coverage, outrageously claiming the Policy was void.

49. As a direct and proximate result of Travelers' conduct, this breach of contract has damaged Plaintiffs, in that the Plaintiffs, despite a policy of insurance expressly providing insurance coverage for the property damage, losses and expenses at issue at the New York and Pennsylvania Premises, have been denied coverage under this Policy.

50. As a direct and proximate result of Travelers' breach of the Policy, Plaintiffs have been damaged in an amount that totals, to date, in excess of $10,000,000, plus attorneys' fees, interest, and consequential damages.

51. Implied in the Policy sold by Travelers was a covenant that Travelers would act in good faith and deal fairly with its insureds, that Travelers would do nothing to interfere with the rights of Plaintiffs, its insureds, to receive the benefits of the Policy, and that Travelers would give at least the same level of consideration to its insureds' interests as it gives to its own interests. Instead of complying with these duties, Travelers breached its covenant of good faith and fair dealing by:

(a) Wrongfully failing to expeditiously adjust and pay Plaintiffs for the losses,

| | |
|---|---|
| | damages, and expenses they have incurred in connection with these claims; |
| (b) | Failing to conduct a full, thorough and timely investigation of the New York and Pennsylvania Premises claims, instead, seeking to avoid its duties to its insureds; |
| (c) | After many months and numerous demands for coverage by Plaintiffs, wrongfully attempting to void the Policy for all claims, by egregiously asserting, without any factual support or justification, that Plaintiffs had concealed or misrepresented material facts with respect to their submission of the claims with the intent to defraud Travelers; |
| (d) | Wrongfully and unreasonably asserting grounds for denying coverage that Travelers knows are not supported by, and in fact are contrary to, the terms of the Policy, the law, insurance industry custom and practice, and the facts; |
| (e) | Failing to fully inquire into possible bases that might support coverage for Plaintiffs' losses, damages and expenses; |
| (f) | Failing to honor its promises and representations in its Policy that Travelers would pay all direct physical loss, as well as, among others, loss to property and equipment, loss of business income, extra expense loss, boiler and machinery loss, utility services losses, claim data expenses, and other losses, damages and expenses suffered by Plaintiffs to the Covered Property at the New York and Pennsylvania premises, which are covered by the Policy;. |
| (g) | Giving greater consideration to its own interests than it gave to the interests of Plaintiffs; and |
| (h) | Otherwise acting as alleged above. |

52. As a result of Travelers' bad faith, Plaintiffs are entitled to recover as damages, among other things, all amounts that have been, or will be, incurred or expended in prosecution of this complaint, which includes all of Plaintiffs' attorneys' fees that they have incurred, and continue to incur, in an amount to be determined at trial.

53. It was foreseeable and in the contemplation of Travelers when it issued the Policy that its failure to timely investigate, adjust, and fully indemnify Plaintiffs for these losses, damages and expenses would result in Plaintiffs sustaining consequential damages and damages beyond the limits of the Policy.

54. As a result of Travelers' breach of contract and breach of the covenant of good faith and fair dealing, Plaintiffs have suffered consequential damages in an amount to be determined, plus interest.

## SECOND CAUSE OF ACTION

### (Declaratory Relief Against Does 1 through 10)

55. Plaintiffs reallege and incorporate by reference herein each allegation contained in paragraphs 1 through 54 above.

56. Plaintiffs are informed and believe, and on that basis allege, that Does 1 through 10 dispute that Plaintiffs are entitled to insurance coverage for the losses, damages and expenses at the New York Premises and Pennsylvania Premises. Therefore, an actual and justiciable controversy exists between Plaintiffs, on the one hand, and Does 1 through 10, on the other hand, concerning the matters alleged herein.

57. Plaintiffs therefore seek a judicial declaration as to the duties of Does 1 through 10, to Plaintiffs under the Policy, confirming that Plaintiffs' contentions, as stated above, are correct. A declaration is necessary at this time in order that the parties' dispute may be resolved and that they may be aware of their respective rights and duties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. On the First Cause of Action:

    a.    For damages, plus interest, according to proof at the time of trial, but at least $10,000,000;

    b.    For consequential damages in an amount to be determined at the time of trial, plus interest, including all reasonable attorneys' fees and expenses incurred, plus interest; and

2.    On the Second Cause of Action, for a declaration in accord with the contentions of Plaintiffs stated above;

3.    On all causes of action:

    a.    For costs of suit incurred herein;

    b.    For consequential damages in an amount to be determined at the time of trial, including reasonable attorneys' fees and expenses incurred;

    c.    Interest; and

    d.    For such other, further, and/or different relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs Mon Chong Loong Trading Corp.; FoodMart International II Corp.; Lucky Star-Deer Park, LLC; R&R Dynasty Corp.; Woogle Realty Corp.; Buffet Corona Corp.; Farmer's Best Market Corp.; Hong Kong Supermarket of Elmhurst, Inc.; and Hong Kong Supermarket of Pennsylvania, Inc. hereby demand trial by jury.

Dated: New York, New York
August 24, 2012

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: _____
Ronald G. Blum
7 Times Square
New York, NY  10036
Tel.:(212) 790-4500
Fax.:(212) 790-4545

Susan Page White (*pro hac vice* forthcoming)
Andrew Struve (*pro hac vice* forthcoming)
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Blvd.
Los Angeles, CA 90064
Tel.: (310) 312-4000
Fax.: (310) 312-4224

*Attorneys for Plaintiffs*
*Mon Chong Loong Trading Corp.; FoodMart International II Corp.; Lucky Star-Deer Park, LLC; R&R Dynasty Corp.; Woogle Realty Corp.; Buffet Corona Corp.; Farmer's Best Market Corp.; Hong Kong Supermarket of Elmhurst, Inc.; and Hong Kong Supermarket of Pennsylvania, Inc.*